CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 3 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DEVAN BREMBRY,                    )
                                  )
        Plaintiff,                )        Case No. 7:10-cv-388
                                  )
v.                                )        **MEMORANDUM OPINION**
                                  )
UNITED STATES OF AMERICA, et al., )        By: Hon. Glen E. Conrad
                                  )        Chief United States District Judge
        Defendants.               )

The plaintiff, a federal inmate proceeding pro se, brings this action against the United

States of America and two employees of the United States Penitentiary in Lee County, Virginia

("USP Lee"), asserting claims against them in connection with an assault he suffered at the hands

of several other inmates as well as with respect to the medical attention that he subsequently

received from prison medical personnel. The case is currently before the court on the parties'

cross-motions for summary judgment. For the reasons that follow, the motion filed by the

plaintiff will be denied, and the motion filed by the defendants will be granted in part and denied

in part.

I.    **Background**

The plaintiff, Devan Brembry, was an inmate at USP Lee during the times relevant to this

action. At approximately 10:30 a.m. on December 3, 2009, Officer Shannon Tignor, who was

serving as the day shift officer in charge of Brembry's housing unit ("E-Unit"), announced a

prisoner "recall," which required all prisoners to return to their assigned housing units prior to

the noon meal. After Tignor unlocked and opened the inner door to the "sallyport" area of E-

Unit, he stepped outside of the unit while the inmates began returning to their assigned units.

According to Brembry, the fact that Tignor stepped outside of E-Unit allowed three

inmates who were assigned to different housing units to "lay in wait" for Brembry inside the

sallyport area. (Compl. at ¶ 4.) As soon as Brembry entered the sallyport, the three inmates began

punching and kicking him. Brembry called for Tignor's help, but Tignor did not respond.

Brembry was able to break free from his attackers' grasp and retrieved a mop handle from a

nearby closet with which to defend himself. Realizing that Tignor was not yet aware of their

attempted assault, Brembry's attackers then went upstairs to Brembry's assigned cell and waited

for him to return. Brembry called again for Tignor's assistance, but Tignor did not hear him and

did not respond. When Brembry went up to his cell and saw the inmates waiting for him, he

reached inside and pressed the duress alarm, after which his attackers renewed their assault on

him. During this second onslaught, Brembry was struck with a metal object and received a gash

in his forehead.

      Tignor, who was still outside of the housing unit, heard the alarm and heard the yelling

from the top range of the unit. When he looked up toward Brembry's cell, he saw Brembry

stabbing at the three other inmates with a broken mop handle. Multiple officers soon arrived on

the scene and subdued each of the inmates. As he was being led away, Brembry twisted free from

the officer who was restraining him and kicked one of his then-subdued attackers in the groin,

striking an officer's lower leg in the process.

      Prison officials took a photograph of Brembry's head wound shortly thereafter, but he did

not receive medical treatment until an hour after the incident, when Chris Bartee, a nurse in the

prison infirmary, cleaned the wound and closed it with five surgical staples. The medical report

produced by Bartee notes that the wound had closed satisfactorily. Bartee did not administer any

local anaesthetic before treating Brembry's wound, nor did he procure a medical doctor to review

his treatment.[1]

According to Brembry, his wound was still bleeding the next morning. Teresa Meade, another nurse at USP Lee, then examined Brembry and removed one of the staples, which was loose. She replaced the staple with a steri-strip and surgical glue. Meade has submitted a declaration to this court in which she recalls that "[t]he wound and staples looked good at that time and there was no active bleeding," that she "did not tell inmate Brembry that there was anything wrong with the placement of the staples," and that she "recall[s] thinking that provider did a good job on the wound closure." Meade Decl. at ¶¶ 8, 10, and 11. She did not make an entry in Brembry's medical record with respect to this action because she did not think it was a significant event. Id. at ¶ 12.

Brembry was subsequently sanctioned for the post-incident groin-kick that he delivered to the other inmate and filed a series of administrative actions with the Bureau of Prisons in connection with the incidents surrounding the events on December 3, 2009. On September 2, 2010, he brought suit against Tignor, Bartee, and the United States of America (collectively, the "defendants") in this court, claiming that Tignor wrongfully caused him to be attacked by his fellow inmates and that Bartee willfully and negligently gave him improper medical care. The court construed his complaint as bringing claims pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., and ordered a response. The government filed a motion to dismiss or, in the alternative, for summary judgment, attaching several pertinent medical and

---

[1]The parties disagree as to the size of the wound to Brembry's forehead. Each medical report states that Brembry suffered a two-centimeter gash; Brembry, on the other hand, alleges that it was three-and-a-half inches in length.

prison records and declarations. The plaintiff responded, filed a cross-motion for summary judgment, and requested discovery of a video recording of the altercation, a medical report related to Meade's removal of the loose staple,[2] and copies of the photographs taken of his head wound by prison officials.

## II.    **Standard of Review**

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, however, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To forestall summary judgment, the nonmoving party must set forth more than a "mere . . . scintilla of evidence." Anderson, 477 U.S. at 252. At the very least, the nonmoving party cannot "create a genuine issue of material fact through mere

---

[2]As indicated above, Meade has indicated that she never created a contemporaneous report due to the perceived insignificance of her action.

speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

## III.    The Defendants' Motion for Summary Judgment

### A.    Claims under the FTCA

The court construes Brembry to be pursuing negligence claims against the defendants under the FTCA. See Compl. at ¶¶ 48, 49, 55, 56, 60, and 61. The FTCA operates as a waiver of the United States' sovereign immunity—but only for certain tort actions, not others. United States v. Varig Airlines, 467 U.S. 797, 808 (1984). If the plaintiff does not comply with the FTCA exhaustion requirements or if the conduct of the government actors at issue falls within one of the statutory exceptions to the FTCA, for example, sovereign immunity is not waived with respect to the plaintiff's claim, and the court lacks subject matter jurisdiction to hear it. See 28 U.S.C. §§ 1346 and 2674-2860; Varig Airlines, 467 U.S. at 808; Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795 (8th Cir. 1998). As Brembry has conceded, the United States is the only proper defendant in a suit under the FTCA. See 28 U.S.C. § 2679(b); Iodice v. United States, 289 F.3d 270, 273 n. 1 (4th Cir. 2002); Allgeier v. United States, 909 F.2d 869, 871 (6th Cir. 1990).

#### 1.    FTCA Failure to Protect Claim

The first of Brembry's asserted FTCA claims alleges that Tignor was negligent in failing to remain inside the housing unit during the controlled inmate movement. Brembry claims that Tignor's post orders required him to remain inside the unit during any controlled inmate movement, that he failed to do so, and that this failure proximately caused Brembry's resulting injuries and disciplinary sanctions.

The defendants concentrate their argument on the so-called "discretionary function exception" to the FTCA. 28 U.S.C. § 2860(a) provides that the FTCA does not waive sovereign immunity with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id.

The Supreme Court has enunciated a two-part test for determining whether the discretionary function exception bars suit in a given case. See United States v. Gaubert, 499 U.S. 315, 322-23 (1991). First, the court must consider the nature of the challenged conduct and determine whether it involves "an element of judgment or choice." Id. at 322. Significantly, "it is the nature of the conduct, rather than the status of the actor that governs whether the exception applies." Id. (citation omitted). Moreover, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Id. (citing Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

Second, even if the challenged conduct involves an element of judgment, the court must determine whether the challenged conduct was "based on considerations of public policy." Gaubert, 499 U.S. at 323. The discretionary function exception was designed by Congress to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Varig Airlines, 467 U.S. at 814. Thus,

> Where Congress has delegated the authority to an independent agency or to the
> Executive Branch to implement the general provisions of a regulatory statute and
> to issue regulations to that end, there is no doubt that planning-level decisions

6

establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs. In addition, the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected.

Gaubert, 499 U.S. at 323.

The defendants argue that Brembry is precluded from challenging Tignor's conduct under the FTCA because Tignor's decision to step outside of the housing unit during the controlled inmate movement was a choice grounded in policy considerations. In short, they argue, Tignor made a permissive judgment call that he could better monitor the returning inmates from outside of the housing unit instead of inside it.

The court cannot agree with the defendants that the discretionary function exception applies to this case on these facts. Certainly, "[d]iscretionary conduct is not confined to the policy or planning level"; it must simply "involv[e] choice or judgment." Id. at 325. There is significant evidence to suggest, however, that Tignor did not have leeway to make any such judgment. Importantly, Brembry does not support his argument by simply relying on the general duty of care for the safekeeping of prisoners imposed on the Bureau of Prisons by 18 U.S.C. § 4042. Although this duty is non-discretionary, "[t]he statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997). Thus, Brembry cannot evade the discretionary function exception merely by virtue of the fact that Tignor owed him a mandatory duty of care. Id.

Apparently anticipating this shortfall, Brembry instead points to an extremely specific source of authority that he claims deprives Tignor of any discretion over where to position

himself during controlled inmate movements: Tignor's post orders. As the defendants

acknowledge, the post orders applicable to all officers manning the general housing units at USP

Lee—including the unit which Tignor was overseeing on December 3, 2009—include the

following mandate:

> The Unit Officer will remain inside the inner door of the Unit during controlled
> movements. This will deter any prohibited acts being committed while the
> movements are in progress. Once the movements are completed, the Officer may
> observe the compound to ensure the approaching inmates be secured in their
> designated Housing Unit.

See Def. Ex. 2, Att. C at 1. See also Def. Ex. 2, Att. B at 8 (providing that E-Unit officers must

post themselves at the entrance of the unit during the controlled movement at 6:00 p.m. to

prevent the entry of contraband or unauthorized inmates).

As evidence that the post orders are not as mandatory as they seem, the defendants point

to the "Post Order Review Sheet" signed by several administrators at USP Lee, which provides

that "Post orders are issued as guidelines for the officers assigned to this post and are not

intended to describe in detail all of the duties assigned to this post. Officers assigned to this post

are expected to use their initiative and good judgment in all situations covered in these post

orders." (Def. Ex. 2, Att. C at 31.) But any discretion-granting sentiment conveyed by this

language is immediately juxtaposed by the thralldom imposed by the subsequent sentences: "If

any questions should arise in policy and procedures pertaining to this post, consult the

appropriate Program Statement, Institution Supplement, Specific Instructions, or your supervisor.

There will be no additions or deletions without the Captain's authorization." Id.

Given the carefully-hedged language of the Post Order Review Sheet, the court cannot

read the applicable post orders as providing Tignor with the amount of carte blanche necessary to

trigger the discretionary function exception. The cases cited by the defendants are not to the

contrary. Clearly, those cases which recognize that prison administrators have discretion to make

staffing decisions and promulgate policies are not on all-fours with this case. See, e.g., Rhodes v.

Chapman, 452 U.S. 337, 349 n. 14 (1981); Bell v. Wolfish, 441 U.S. 520, 551 (1979). Nor does

the instant case square neatly with other decisions in which prison staff had discretion regarding

daily operational procedures, because in none of those cases were the prison employees subject to

specific orders that purported to determine their subsequent course of conduct. See, e.g.,

Santana-Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003) (prison staff exercised discretion

when assigning an inmate as a kitchen orderly and in determining how to store cleaning

equipment in the absence of "any explicit controlling directives" regarding these decisions);

Dykstra, 140 F.3d at 796 (holding that a prison official's decision not to warn an inmate that he

was at risk of being sexually assaulted fell under the discretionary function exception because

"there is no regulation that mandates a specific course of action in such circumstances.");

Calderon, 123 F.3d at 949 (prison staff had discretion whether or not to discipline an inmate prior

to his attack on the plaintiff when "none of the federal regulations cited above set forth a

mandatory, non-discretionary disciplinary action" that they had to impose).

The decision in Queen v. United States, 2007 WL 3120413 (D. Kan. Oct. 22, 2007), upon

which the defendants rely heavily, is similarly inapposite. There, the court ruled that the

discretionary function exception barred an inmate's claim against prison officials who did not

observe him being assaulted in a stairwell because "Plaintiff has not presented evidence of a

mandatory duty to monitor a specific area such as the stairwell or a specific inmate. . . . The

USP-Leavenworth post orders . . . do not require prison guards to monitor specific portions of the

prison or of the stairwell during a controlled movement." Id. at *3. As has been previously observed, the post orders in the case at bar present a fundamentally different scenario than existed in Queen.

In fact, the Queen decision cites to Garza v. United States, 161 F. App'x 341 (5th Cir. 2005) (unpublished), which is almost exactly on point. In Garza, an inmate who was assaulted by another inmate claimed in an FTCA action that the guard on duty had failed to properly patrol the recreation yard in which the assault took place. Id. at 343. The applicable post orders specifically stated that during the types of inmate movement at issue, the guard on duty "will patrol the recreation yard" and "will monitor and inspect all security devices and be alert for any physical security concerns or weakness." Id. at 344 (emphasis added). The post orders also contained a caveat that is almost identical to that in the case at bar: "NOTE: These post orders are issued as a guideline for the officers assigned to this post, and are not intended to describe in detail all of the officers [sic] responsibilities. Good judgement [sic] and initiative are expected in all situations." Id.

Despite the appended caveat to the post orders, the Garza court held that the discretionary function exception did not apply to the guard's alleged failure to patrol the recreation yard, finding that the post order prescribed a "straightforward and unambiguous" instruction that stripped the post guard of discretion over her specific position during the type of inmate movement at issue in the case. Id. The court refused to countenance the argument that the caveat "infuses the 'will patrol' instruction with the element of discretion necessary to invoke the discretionary function exception." Id. at 345. Instead, the court held that

> [w]e interpret the Note's admonition to use good judgment and initiative in

10

following the Post Orders as enlarging the guards' responsibility to do more than just check off the list when more may be required to achieve the penitentiary's overall objectives of safety and order. When the Government sets forth extraordinarily detailed instructions (which it presumably expects employees to follow to the letter) that would otherwise clearly fall outside of the discretionary function exception, it should not be allowed to sweep these directives back under the shield by inserting a general "disclaimer." Permitting this kind of immunization clearly sidesteps the remedial objective of the FTCA by allowing the exception to swallow the rule.

Id. at 345.

Here, as in Garza, the defendants ask the court to find that Tignor had the discretion to step outside of E-Unit during a controlled inmate movement notwithstanding his post orders' explicit mandate that he remain inside it. The court cannot do so. See Jacocks v. Hedrick, 2006 WL 2850639, at * 10 (W.D. Va. Sept. 29, 2006) (Turk, J.) (general directives such as duty to establish and maintain adequate control of inmates, monitor inmate movement and be on alert for irregular or unusual movement of inmates protected by discretionary function doctrine, but specific positioning requirement for monitoring inmate movement not protected by discretionary function doctrine). While the discretionary function exception may very well apply to the prison administrators who formulated and adopted the post orders, it cannot apply to the conduct of Tignor, whose orders left him no room to determine his self-positioning during controlled inmate movements. Garza, 161 F. App'x at 344-45 (holding that the discretionary function exception applied to administrators' conduct but not to the conduct of the guard on duty). See also Gaubert, 499 U.S. at 322 ("The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.") (citation omitted); Berkovitz, 486 U.S. at 544; Vickers v. United States, 228 F.3d 944, 951 (9th Cir. 2000) ("[T]he

discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive.").[3]

Inasmuch as the discretionary function exception does not bar Brembry's FTCA action with respect to Tignor's alleged failure to protect him from the assault he suffered at the hands of his fellow inmates, the merits of his claims are properly before the court. "In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983). See also 28 U.S.C. § 1346. "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." Talley v. Danek Medical, Inc., 179 F.3d 154, 157 (4th Cir. 1999).

The defendants have conceded that they owe a legal duty of care to Brembry pursuant to 18 U.S.C. § 4042. See Def. Br. at 12. This duty "requires the exercise of ordinary diligence to keep prisoners safe and free from harm," and to recover, a plaintiff must show that the

---

[3]The post orders' direction that officers such as Tignor direct "any" questions regarding "policy and procedures" to their supervisors is particularly telling with respect to the second prong of the Gaubert analysis, as well. (Def. Ex. 2, Att. C at 31.) See Garza, 161 F. App'x at 345 (noting that the post-guard's conduct was a "deviation from a policy-making decision that had already been made and set forth in the Post Orders. That policy-making decision established a non-discretionary duty to patrol and supervise the rec yard."). See also Gaubert, 499 U.S. at 336 (Scalia, J., concurring) (explaining that it is "necessary for application of the discretionary function exception that the decisionmaker be an official who possesses the relevant policy responsibility" even though that decision may occur at the operational level); Berkovitz, 486 U.S. at 536-37 ("[A]ssuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. . . . In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.") (citations omitted).

government was negligent in the exercise of its responsibilities. Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). Although the defendants argue that there is no evidence that Tignor breached the duty owed to Brembry, "[t]he standard of conduct of a 'reasonable man' in a negligence case is generally determined by a jury on a case-by-case basis." Talley, 179 F.3d at 158.[4] At this stage in the case, Brembry has also made some showing of causation and injury. Further, he seeks additional pre-trial discovery that potentially bears upon these issues. Thus, the court concludes that it would be premature to grant summary judgment on this claim at this time.

  2.  FTCA Medical Malpractice Claim

  Brembry's second FTCA claim alleges, in essence, that Bartee was negligent in failing to properly close his head wound, in failing to use local anaesthetic during the stapling procedure, in failing to perform the procedure until an hour after the injury occurred, and in denying Brembry access to a medical doctor for purposes of examining and treating Brembry's head wound.[5] This claim, too, is governed by Virginia law. Myrick, 723 F.2d at 1159.

  In Virginia, however, the Virginia Medical Malpractice Act ("VMMA") requires any party alleging negligent medical care to obtain an expert certification of merit prior to serving process upon the defendant. See VA. CODE § 8.01-20.1. The failure to comply with this certification requirement is grounds for dismissal. Id.; Delaney v. Marsh, 2010 WL 1212569, at

---

  [4]It is also possible that Tignor's alleged failure to comply with his post orders triggers application of the doctrine of negligence per se. See Talley, 179 F.3d at 158 ("Under the doctrine of negligence per se, however, the violation of a statute or ordinance can constitute a violation of the "reasonable man" standard as a matter of law. Thus, in negligence per se cases, the courts "adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation.") (citing Butler v. Frieden, 158 S.E.2d 121, 122 (Va. 1967) and RESTATEMENT (SECOND) OF TORTS § 286 (1965)).

  [5]Any allegation that Bartee committed an intentional tort against Brembry is not cognizable under the FTCA. See 28 U.S.C. § 2680(h).

13

*3 n.6 (W.D. Va. Mar. 25, 2010) (unpublished) (Kiser, J.); Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007). This requirement may be excused only where "plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." VA. CODE § 8.01-20.1. Virginia courts have observed that instances excusing the certification of merit requirement will be "rare." Beverly Enterprises-Virginia v. Nichols, 441 S.E.2d 1, 3 (Va. 1994).

Here, Brembry has not obtained the requisite certificate of merit, but argues that the injury he received was so simple to treat that the exception should apply. The court cannot agree. Virginia precedent is clear that "in most instances, expert testimony is required to assist the jury. Expert testimony is ordinarily necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." Beverly Enterprises-Virginia, 441 S.E.2d at 3. Virginia courts have allowed plaintiffs to proceed without experts in medical negligence cases only in situations where a layperson would know the requisite standard of care without assistance. Id. For example, the question whether it was negligent for a tray of food to be left with a patient who had previously had serious choking incidents fits this exception, as does the issue of whether it was negligent for nurses to wait thirty minutes to respond to a call for help from a bed-ridden, elderly patient who had previously gotten out of bed after receiving no response. See Beverly Enterprises-Virginia, 441 S.E.2d at 3; Jefferson Hospital, Inc. v. Van Lear, 41 S.E.2d 441 (1947).

By contrast, a layperson could not be expected to know, as Brembry argues, the proper procedure in which to insert surgical staples, whether local anaesthetic is generally used during

the procedures at issue, whether this type of injury necessitated a response more rapid than one hour of lag time, or whether nurses performing a procedure of this type generally need to procure additional expert medical consultation. Indeed, this last contention belies the ability of Brembry's claim to proceed without the requisite expert evidence. Moreover, the issue of whether each of these acts caused any resulting injury to Brembry—whether, for example, the one-hour delay proximately caused any infection or a worse wound approximation—is certainly not within the province of the lay juror. Thus, summary judgment must be entered against him on this claim.

B. **Bivens Claims**

Brembry also brings claims against the defendants pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)—or, more properly, pursuant to Carlson v. Green, 446 U.S. 14 (1980), which extended Bivens to recognize an implied damages action against federal prison officials for violation of the Eighth Amendment. See Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006).

Before bringing such an action, however, Brembry must have exhausted "such administrative remedies as are available" to him with respect to the conditions of which he complains. 42 U.S.C. § 1997e(a). Brembry's reliance on McCarthy v. Madigan, 503 U.S. 140, 150-51 (1992) is misplaced; the law is now settled that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Moreover, this exhaustion requirement requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 94 (2006). That is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88.

For a federal inmate to properly exhaust his claims, he must first file a written formal complaint on the proper form ("BP-9") at the institutional level. See 28 C.F.R. §§ 542.10, 542.14. He must then appeal any adverse decision first at the regional level (using form "BP-10") and then to the Bureau of Prisons' Office of General Counsel (using form "BP-11"). See 28 C.F.R. § 542.15. The defendants point out that, according to the Bureau's records, Brembry never submitted any complaints at the institutional level. Instead, the records show that Brembry started the process only at the regional level without ever filing anything at the institutional level.

Brembry, however, claims that he attempted to file several complaints at the institutional level prior to filing at the regional level, but that, because he had been transferred to the Special Housing Unit at USP Lee, he had to rely on the guards to turn in his completed forms. After attempting to file BP-9s several times but receiving no response, Brembry concluded that the guards were not delivering his complaint forms and therefore proceeded to mail his forms for submission at the regional level. Moreover, Brembry explains that he has no copies of the BP-9s he submitted because his confinement in the Special Housing Unit did not give him access to copying machines. Brembry now claims that the defendants cannot rely on the alleged wrongdoing of Bureau employees to mount the affirmative defense of inexhaustion.

The court agrees with Brembry. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Brembry failed to administratively exhaust his claims. Jones v. Bock, 549 U.S. 199, 212 (2007). As a consequence, the defendants may procure summary judgment on the basis of inexhaustion only if they can "show that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." Hill v. O'Brien, 387 F. App'x 396, 399 (4th Cir. July

12, 2010) (unpublished) (reversing an award of summary judgment against a prisoner who claimed that prison officials had hindered his ability to file administrative grievances). Of course, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The court therefore concludes that Brembry has sufficiently shown genuine issues of material fact as to whether he exhausted all administrative remedies which were available to him. See Hill, 387 F. App'x at 400.

Given this determination, summary judgment cannot be entered on Brembry's Bivens claim that Tignor failed to protect him from Brembry's fellow inmates. To succeed on such a claim, Brembry must sufficiently show that Tignor was deliberately indifferent to a serious risk to Brembry's health or safety. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Id. at 837. In this case, Tignor's post orders specifically required him to "remain inside the inner door of the Unit during controlled movements." See Def. Ex. 2, Att. C at 1. The rationale offered by prison administrators for this specific requirement was that this particular positioning of officers "will deter any prohibited acts being committed while the movements are in progress." Id. This rationale suggests that the defendants may have had some knowledge that the inner door area of the housing units posed a heightened security risk to inmates during controlled movements. Significantly, an officer may violate the Eighth Amendment by deliberately ignoring an excessive risk of attack which "all prisoners in [the plaintiff's] situation face." Farmer, 511 U.S. at 843; Pierson v. Hartley, 391 F.3d 898, 903 (7th Cir. 2004). Cf. Whitley v. Albers, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that

17

does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."). Accordingly, given that an inmate's rights in this context are well-established in the caselaw, the court concludes that it would be premature to grant summary judgment on this claim at this time. See Odom v. South Carolina Dept. of Corrections, 349 F.3d 765, 770-71 (4th Cir. 2003).

On the other hand, Brembry's claim that Bartee was deliberately indifferent to his serious medical needs, see Estelle v. Gamble, 429 U.S. 97, 104 (1976), must fail. "In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Thus, a mere claim of medical negligence does not state an Eighth Amendment violation. Instead, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

In this respect, Brembry points to the one-hour treatment delay, the allegedly-improper stapling procedure, the failure to use local anaesthetic, and the failure to obtain a second opinion as evidence of Bartee's deliberate indifference to his medical needs. Certainly, unwarranted delay may constitute evidence of a medical provider's deliberate indifference. See, e.g., Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). However, "[t]he propriety of a delay in providing medical care must be measured against the severity and immediacy of the medical condition involved." Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D. Va. 1996) (Turk, J.). Here, Brembry seeks to recover based on a one-hour delay for the treatment of a laceration on his

forehead. Brembry has made no suggestion that Bartee was aware of his injury for the entire duration of this time lapse. The court cannot conclude that deliberate indifference on the part of Bartee can be inferred from this relatively minimal delay in the treatment of Brembry's relatively minor laceration. Cf. Brown v. Hughes, 894 F.2d 1533, 1535 (11th Cir. 1990) (four-hour delay in treating broken foot); Reed v. Dunham, 893 F.2d 285, 287 (10th Cir. 1990) (two-hour delay in treating serious stab wounds); Cooper v. Dyke, 814 F.2d 941, 943-46 (4th Cir. 1987) (two-hour delay in treating gunshot wound).

Nor can the court conclude that the rest of the conduct highlighted by Brembry constitutes an Eighth Amendment violation. Even assuming that Brembry's head wound constituted a "serious medical condition," Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998), Brembry has failed to demonstrate that Bartee knew that a substantial risk of harm to Brembry existed and deliberately disregarded that risk. See Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). Because the Eighth Amendment is violated only where an officer inflicts unnecessary and wanton infliction of pain, "allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (citations omitted).

At best, Brembry's claims on each of these scores simply register his disagreement with the medical decisions made during his course of treatment. But the deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.'" Inmates of Allegheny County Jail v. Pierce, 612 F.2d

754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). In other words, "[m]edical decisions . . . such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview. Such matters are questions of tort, not constitutional law." Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996). Because in this case Brembry seeks to challenge the soundness of the exercise of Bartee's medical judgment with respect to the proper performance of the stapling procedure, his claim is not cognizable under the Eighth Amendment. Estelle, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); Miltier, 896 F.2d at 852 ("Mere negligence or malpractice does not violate the Eighth Amendment."). Accordingly, summary judgment must be entered on Brembry's Bivens claims.

## IV.    Brembry's Cross-Motion for Summary Judgment

Brembry, in his response to the defendant's motion, also asserts his own motion for summary judgment. It is speedily dealt with. As only Brembry's claims dealing with the conduct of Tignor have survived the court's rulings on the defendants' motion for summary judgment, Brembry's cross-motion for summary judgment on the other claims must be denied. Nor is Brembry entitled to summary judgment with respect to the remaining claims. A reasonable fact-finder could well conclude that Tignor did not breach any duty in posting himself outside of E-Unit rather than inside, that his decision to do so did not demonstrate deliberate indifference, or that his conduct did not proximately cause Brembry's resulting injuries. Anderson, 477 U.S. at 248. Accordingly, Brembry's cross-motion for summary judgment must be denied.

## V. __Conclusion__

For these reasons, the motion for summary judgment filed by the defendants will be granted in part and denied in part. The motion for summary judgment filed by Brembry will be denied.

Given that Brembry's FTCA claim must be tried by the court without a jury and that he has not otherwise made a jury demand, the Clerk is directed to set this case for a bench trial. <u>See</u> 28 U.S.C. § 2402. The Clerk is further directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and to all counsel of record.

ENTER: This __13th__ day of January, 2011.

<u>_Glen Conrad_</u>

Chief United States District Judge